**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**Eastern Division**

| | |
|---|---|
| JAMES J. TOBIN, IV, on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>TRANS UNION LLC,<br><br>*Defendant.* | Case No. 25-cv-10515 |

**INTRODUCTION**

Plaintiff James J. Tobin, IV ("Plaintiff") brings this Class Action Complaint on behalf of himself and all others similarly situated against Defendant Trans Union LLC ("TransUnion" or "Defendant"). Plaintiff bases the following allegations upon information and belief, investigation of counsel and his own personal knowledge.

**NATURE OF THE ACTION**

1. Plaintiff brings this class action lawsuit against TransUnion for its failure to properly secure and safeguard highly valuable, protected, personally identifiable information ("PII") which, as a direct and proximate result of such failures, was accessed by one or more malicious third parties and compromised.

2. On or about July 28, 2025, unauthorized actors gained access to a third-party application used by TransUnion for its U.S. consumer support operations, resulting in the exposure of sensitive PII, including names, birthdates, and Social Security Numbers of more than 4.4 million individuals, including Plaintiff. The breach was discovered on July 30, 2025, and publicly disclosed in filings with state authorities.

3. TransUnion failed to implement adequate cybersecurity measures to protect the PII of Plaintiff and class members, particularly in its reliance on third-party vendors.

4. Plaintiff and Class Members are now at a significantly increased and certainly impending risk of fraud, identity theft, and similar forms of criminal mischief—risks which may last for the rest of their lives. Consequently, Plaintiff and Class Members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes.

5. Plaintiff, on behalf of himself and the Class as defined herein, brings claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, and declaratory judgment, seeking damages, attorneys' fees, costs, and expenses, and appropriate injunctive and declaratory relief.

6. To recover from Defendant from these harms, Plaintiff and the Class seek damages in an amount to be determined at trial, declaratory judgment, and injunctive relief requiring Defendant to: (1) investigate and disclose, expeditiously, the full nature of the Data Breach and the types of PII accessed, obtained, or exposed by the hackers; and (2) implement improved data security practices to reasonably guard against future breaches of PII possessed by Defendant.

## PARTIES

7. Plaintiff is an adult, who, at all relevant times, is and was a citizen of the State of New Jersey.

8. Defendant TransUnion LLC is a Delaware limited liability company with a principal place of business located in Chicago, Illinois.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act because Plaintiff and at least one member of the Class, as defined below,

are citizens of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

10. This Court has general personal jurisdiction over Defendant because TransUnion resides in the State of Illinois.

11. This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1), because TransUnion resides in this District, a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District; and TransUnion conducts substantial business within this District.

## STATEMENT OF FACTS

12. On or about July 28, 2025, TransUnion experienced a significant data breach involving unauthorized access to a third-party application utilized in its U.S. consumer support operations. The breach was discovered on July 30, 2025, and subsequently disclosed in filings with state authorities, including the Maine and Texas attorneys general, on August 28, 2025.

13. The breach affected more than 4.4 million customers whose personal information was stored within the compromised application. According to disclosures, the information accessed included customers' names, dates of birth, and Social Security numbers. Notably, TransUnion stated that the breach did not involve credit reports or core credit information; however, the exposed data elements are highly sensitive and pose substantial risks to affected individuals.

14. TransUnion's reliance on third-party vendors for operational efficiency and scale contributed to the vulnerability exploited in this incident. The unauthorized actors targeted a trusted vendor's application, leveraging the trust relationship to infiltrate TransUnion's systems. This method of attack is consistent with a broader trend in cybersecurity incidents, where hackers

compromise vendors first to gain access to larger targets. Industry research indicates that such vendor-related breaches are increasingly common, with hackers exploiting the "vendor vulnerability paradox"—the more deeply firms integrate third-party partners, the more exposed they become.

15. The breach here illustrates that dynamic. It was not the product of sophisticated hacking techniques, but of the predictable weaknesses that arise when companies entrust sensitive data to outside vendors without robust oversight. By exploiting gaps in vendor security and the assumption of reliability, hackers were able to compromise millions of consumers' personal information. The incident highlights a structural problem for companies like TransUnion: outsourcing critical functions may create efficiencies, but it also multiplies points of entry for hackers and magnifies the consequences of a single failure.

16. Upon information and belief, the Data Breach is the result of Defendant's failure to implement adequate data security measures and to exercise reasonable oversight of its vendors, including by disregarding or failing to monitor compliance with the vendor's own security recommendations.

17. TransUnion's conduct in connection with the breach demonstrates a failure to exercise reasonable care in safeguarding customer data. Despite the known risks associated with third-party vendor relationships, TransUnion did not implement sufficient controls to prevent unauthorized access or to detect the breach in a timely manner. The company's delayed disclosure and lack of transparency regarding the specific data elements involved further exacerbated the harm to class members, depriving them of the information necessary to protect themselves.

18. TransUnion's inadequate cybersecurity practices and insufficient oversight of third-party vendors directly resulted in the compromise of sensitive personal information belonging to

millions of individuals. The resulting harm to class members is concrete, ongoing, and attributable to TransUnion's acts and omissions as described herein.

19. As a result of TransUnion's failure to implement and maintain adequate cybersecurity measures, including proper oversight of third-party vendors, class members have suffered and continue to suffer harm. The exposure of personally identifiable information such as names, birthdates, and Social Security numbers places affected individuals at heightened risk of identity theft, financial fraud, and other forms of PII misuse. The lost time and money associated with monitoring credit, securing accounts, and mitigating potential damage are substantial and ongoing.

20. Furthermore, the Data Breach has forced Plaintiff and Class Members to take precautionary steps, such as placing fraud alerts, freezing credit, and monitoring financial statements, all of which entail time, effort, and potential financial costs. The risk of future harm remains significant, as stolen personal information can be used or sold by malicious actors for years after the initial breach.

21. On or about September 1, 2025, Plaintiff learned that his PII, including, but not necessarily limited to, his name, date of birth, and Social Security Number, had been stolen in the Data Breach.

22. Since the announcement of the Data Breach, Plaintiff has been required to spend his valuable time protecting himself against future identity theft and fraudulent transactions, including by monitoring his various accounts in an effort to detect, prevent, and resolve any misuses of his PII—time which he would not have had to expend but for the Data Breach.

23. As a result of the Data Breach, Plaintiff will continue to be at heightened and certainly impending risk for fraud and identity theft, along with their attendant monetary injuries, for years to come.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> All individuals in the United States whose PII was compromised in the TransUnion Data Breach that occurred on or about July 28, 2025, which TransUnion disclosed on or about August 28, 2025.

25. Excluded from the Class is Defendant, its subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

26. Plaintiff reserves the right to modify or amend the definition of the proposed Class prior to moving for class certification.

27. **Numerosity.** The class is so numerous that joinder of all members is impracticable. The disposition of the individual claims of the respective Class Members through this class action will benefit both the parties and this Court. The exact size of the Class and the identities of the individual members thereof are ascertainable through Defendant's records, including but not limited to, the files implicated in the Data Breach. Based upon public filings, approximately 4.4 million individuals have been affected.

28. **Commonality.** This action involves questions of law and fact that are common to Plaintiff and the Class members. Such common questions include, but are not limited to:

a. whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class members;

b. whether Defendant was negligent in collecting and storing Plaintiff's and Class members' PII;

c. whether Defendant had duties not to disclose the PII of Plaintiff and Class members to unauthorized third parties;

d. whether Defendant took reasonable steps and measures to safeguard Plaintiff's and Class members' PII;

e. whether Defendant failed to adequately safeguard the PII of Plaintiff and Class members;

f. whether Defendant breached its duties to exercise reasonable care in handling Plaintiff's and Class members' PII;

g. whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h. whether Plaintiff and Class members are entitled to damages as a result of Defendant's wrongful conduct; and

i. whether Plaintiff and Class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

29. **Typicality.** Plaintiff's claims are typical of the claims of the Class members. The claims of Plaintiff and Class members are based on the same legal theories and arise from the same failure by Defendant to safeguard their PII. Plaintiff and Class members directly and/or indirectly

entrusted Defendant with their PII, and it was subsequently compromised by an unauthorized third party.

30. **Adequacy of Representation.** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class members Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; Plaintiff intends to prosecute this action vigorously; and Plaintiff's counsel has adequate financial means to vigorously pursue this action and ensure the interests of the Class will not be harmed. Furthermore, the interests of the Class members will be fairly and adequately protected and represented by Plaintiff and Plaintiff's counsel.

31. **Superiority.** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

32. **Predominance.** Common questions of law and fact predominate over any questions affecting only individual Class members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages is common to Plaintiff and each member of the Class. If Defendant breached its duty, then Plaintiff and each Class member suffered damages by that conduct.

33. **Injunctive Relief.** Defendant has acted and/or refused to act on grounds that generally apply to the Class making injunctive and/or declaratory relief appropriate with respect to the Class under FED. R. CIV. P. 23(b)(2).

34. **Ascertainability.** Members of the Class are ascertainable. Class membership is defined using objective criteria, and Class members may be readily identified through Defendant's books and records, including the files implicated in the Data Breach.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### NEGLIGENCE
(On Behalf of Plaintiff and the Class)

35. Plaintiff restates and realleges all preceding allegations as if fully set forth herein.

36. Defendant owed a duty under common law to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, and protecting their PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

37. Specifically, this duty included, *inter alia*: (a) designing, maintaining, and testing Defendant's own security systems, as well as those of any third-party vendors entrusted with Plaintiff's and Class members' PII, to ensure that such information was adequately secured and protected; (b) implementing processes, including oversight of vendor systems, that would detect a breach of its security systems in a timely manner; (c) timely acting upon warnings and alerts—whether generated by Defendant's internal systems or by its vendors—regarding intrusions into networks containing Plaintiff's and Class members' PII; (d) maintaining, and requiring vendors to maintain, data security measures consistent with industry standards and best practices for safeguarding sensitive personal information; and (e) exercising reasonable oversight of third-party

vendors entrusted with access to or responsibility for Plaintiff's and Class members' PII, including monitoring compliance with security requirements and vendor-recommended safeguards.

38. TransUnion's duty to use reasonable care arose from several sources, including but not limited to the following:

39. TransUnion had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices on the part of Defendant. By collecting and storing valuable PII that is routinely targeted by criminals for unauthorized access, TransUnion was obligated to act with reasonable care to protect against these foreseeable threats.

40. TransUnion admits that it has the responsibility to protect the customer data with which it was entrusted. Yet, TransUnion did not live up to that responsibility.

41. TransUnion breached the duties owed to Plaintiff and Class Members and thus was negligent. TransUnion breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols, and practices—both internally and through its vendors—sufficient to protect the PII of Plaintiff and Class Members; (b) detect the breach , whether within its own systems or those of its vendors, while it was ongoing; (c) maintain, and require its vendors to maintain, security systems consistent with industry standards; and (d) promptly disclose that Plaintiff's and Class Members' PII in TransUnion's possession had been or was reasonably believed to have been, stolen or compromised.

42. But for TransUnion's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PII would not have been compromised.

43. As a direct and proximate result of TransUnion's negligence, Plaintiff and Class Members have suffered injuries including:

a. theft of their PII;

b. unauthorized charges to their bank accounts;

c. costs associated with canceling and ordering new payment cards;

d. time spent reporting fraudulent activity;

e. costs associated with requesting credit freezes;

f. costs associated with the detection and prevention of identity theft;

g. costs associated with purchasing credit monitoring and identity theft protection services;

h. lowered credit scores resulting from credit inquiries following fraudulent activities;

i. costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach;

j. the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

k. damages to and diminution in value of their PII directly or indirectly entrusted to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class members' data against theft and not allow access and misuse of their data by others; and

l. continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff and Class members.

44. As a direct and proximate result of Defendant's negligence, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**

**NEGLIGENCE *PER SE***
(On Behalf of Plaintiff and the Class)

45. Plaintiff restates and realleges all preceding allegations as if fully set forth herein.

46. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies such as TransUnion for failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of Defendant's duties.

47. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect customers' PII and not complying with the industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of a data breach.

48. Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

49. Moreover, the harm that has occurred is the type of harm that the FTC Act was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

50. Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

51. The Gramm Leach Bliley Act ("GLBA") states "that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the

security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a).

52. Defendant violated the GLBA and the Safeguards Rule (16 C.F.R. Part 314) by failing to use reasonable measures to protect PII and not complying with the industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and disclosed and the foreseeable consequences of a data breach.

53. Plaintiff and Class Members are consumers within the class of persons the GLBA and the Safeguards Rule was intended to protect.

54. Moreover, the harm that has occurred is the type of harm that the GLBA and the Safeguards Rule were intended to guard against.

55. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered injuries, including those identified above.

56. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have been injured as described herein and above, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**

**BREACH OF IMPLIED CONTRACT**
(On Behalf of Plaintiff and the Class)

57. Plaintiff restates and realleges all preceding factual allegations as if fully set forth herein.

58. TransUnion required Plaintiff and Class Members to provide their PII as a condition for using TransUnion's services.

59. In doing so, Plaintiff and Class Members entered into implied contracts with TransUnion by which Defendant agreed to safeguard and protect such PII, keep such PII secure

and confidential, and to timely and accurately notify Plaintiff and Class Members if their PII had been breached, compromised, or stolen.

60. When entering into these implied contracts, Plaintiff and Class Members reasonably believed and expected that TransUnion's data security practices complied with its statutory and common law duties to adequately protect Plaintiff's and Class Members' PII and to timely notify them of a data breach.

61. Indeed, implicit in these exchanges was a promise by Defendant to ensure the PII of Plaintiff and Class members in its possession would be used to provide the agreed-upon services and that TransUnion would take adequate measures to protect Plaintiff's and Class Members' PII and timely notify them in the event of a data breach.

62. It is clear by these exchanges that the parties intended to enter into implied agreements supported by mutual assent. Plaintiff and Class Members would not have disclosed their PII to Defendant but for the prospect of Defendant's promise of services. Conversely, TransUnion presumably would not have taken Plaintiff's and Class Members' PII if it did not intend to provide Plaintiff and Class Members services through Defendant.

63. Plaintiff and Class Members would not have provided their PII to TransUnion had they known that Defendant would not safeguard their PII as promised, or provide timely notice of a data breach.

64. Plaintiff and Class Members fully performed their obligations under their implied contracts with TransUnion.

65. TransUnion breached its implied contracts with Plaintiff and Class Members by failing to safeguard Plaintiff's and Class Members' PII and by failing to provide them with timely and accurate notice of the Data Breach.

66. The losses and damages Plaintiff and Class Members sustained, include, but are not limited to:

a. Theft of their PII;

b. Costs associated with requested credit freezes;

c. Costs associated with the detection and prevention of identity theft and unauthorized use of the PII;

d. Costs associated with purchasing credit monitoring and identity theft protection services;

e. Lowered credit scores resulting from credit inquiries following fraudulent activities;

f. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

g. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of cyber-criminals;

h. Damages to and diminution in value of their PII entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' data against theft and not allow access and misuse of their data by others; and

i. Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII.

67. As a direct and proximate result of TransUnion's breach of contract, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**
(On Behalf of Plaintiff and the Class)

68. Plaintiff restates and realleges all preceding allegations as if fully set forth herein

69. Plaintiff and Class members have an interest, both equitable and legal, in the PII about them that was conferred upon, collected by, and maintained by TransUnion and that was ultimately stolen in the Data Breach. This PII was conferred on TransUnion in most cases by third-parties but in some instances directly and/or indirectly by Plaintiff and Class members themselves.

70. TransUnion benefitted from the conferral upon it of the PII pertaining to Plaintiff and Class members and by its ability to retain and use that information. TransUnion understood that it was in fact so benefited. Indeed, TransUnion's business would not exist but for the need for collect, maintain, and sell Plaintiff's and Class members' PII to facilitate transactions between lenders and borrowers.

71. TransUnion also understood and appreciated that the PII pertaining to Plaintiff and Class members was private and confidential and its value depended upon TransUnion maintaining the privacy and confidentiality of that PII.

72. But for TransUnion's assurances and commitment to maintain the privacy and confidentiality of sensitive data—including by adequately overseeing its vendors—Plaintiff's and Class Members' PII would not have been transferred to and entrusted with TransUnion. Further, had TransUnion disclosed that either its own data security measures or those of its vendors were inadequate, TransUnion would not have been permitted to continue in operation by regulators, its shareholders, and participants in the marketplace.

73. As a result of TransUnion's wrongful conduct as alleged in this Complaint, including its implementation of inadequate data security measures, TransUnion has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class members. Among other things, TransUnion continues to benefit and profit from the collection, maintenance, and sale of the PII while its value to Plaintiff and Class members has been diminished.

74. TransUnion's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff's and Class members' sensitive PII, while at the same time failing to maintain that information secure from intrusion and theft by hackers and identity thieves.

75. Under the common law doctrine of unjust enrichment, it is inequitable for TransUnion to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiff and Class members in an unfair and unconscionable manner. TransUnion's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

76. The benefit conferred upon, received, and enjoyed by TransUnion was not conferred officiously or gratuitously, and it would be inequitable and unjust for TransUnion to retain the benefit.

77. Plaintiff is without an adequate remedy at law.

78. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury and/or harm, including those identified above.

79. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class members, proceeds that they unjustly received from them.

**FIFTH CAUSE OF ACTION**

**DECLARATORY JUDGMENT**
(On Behalf of Plaintiff and the Class)

80. Plaintiff restates and realleges all preceding factual allegations as if fully set forth herein.

81. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal laws and regulations described herein.

82. An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class members' PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class members from further data breaches that compromise their PII. Plaintiff alleges that Defendant still possesses Plaintiff's and Class members' PII, and that Defendant's data security measures remain inadequate. Furthermore, Plaintiff and Class members continue to suffer injury as a result of the compromise of their PII and remain at imminent risk that further compromises of their PII will occur in the future.

83. Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, *inter alia*, the following:

a. Defendant owes a legal duty to secure consumers' PII under the common law and Section 5 of the FTC Act; and

b. Defendant continues to breach this legal duty by failing to employ reasonable data security measures to safeguard Plaintiff's and Class members' PII.

84. This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect consumers' PII.

85. If an injunction is not issued, Plaintiff and Class members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at TransUnion. The risk of another such breach is real, immediate, and substantial. If another breach at TransUnion occurs, Plaintiff and Class members will not have an adequate remedy at law because the resulting injuries are not readily quantified, and they will be forced to bring multiple lawsuits to rectify the same conduct.

86. The hardship to Plaintiff and Class members if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiff and Class members will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal. Defendant has a pre-existing legal obligation to employ such measures.

87. Issuance of the requested injunction will not disserve the public interest. On the contrary, such an injunction would benefit the public by possibly preventing another data breach

at TransUnion, thus eliminating the additional injuries that would result to Plaintiff and consumers whose confidential information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, on behalf of himself and all others similarly situated, prays for relief as follows:

A. an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B. an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C. damages in an amount to be determined by the trier of fact;

D. an order of restitution and all other forms of equitable monetary relief;

E. declaratory and injunctive relief as described herein;

F. an award of Plaintiff reasonable attorneys' fees, costs, and expenses;

G. an award of pre- and post-judgment interest on any amounts awarded; and

H. an award of such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

A jury trial is demanded on all claims so triable.

Dated: September 2, 2025

Respectfully submitted,

JAMES J. TOBIN, IV, by his attorneys,

*/s/Jordan M. Sartell*

Jordan M. Sartell
FRANCIS MAILMAN SOUMILAS, P.C.
310 S. County Farm Rd., Ste. H
Wheaton, IL 60187
215-735-8600
jsartell@consumerlawfirm.com

James A. Francis (*pro hac vice* forthcoming)
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market St., Ste. 2510
Philadelphia, PA 19103
215-735-8600
jfrancis@consumerlawfirm.com

Norman E. Siegel (*pro hac vice* forthcoming)
J. Austin Moore (*pro hac vice* forthcoming)
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
(816) 714-7100
siegel@stuevesiegel.com
moore@stuevesiegel.com